J.S52007/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TELLY WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 274 EDA 2013 |

Appeal from the PCRA Order December 28, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0602041-2005

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:            **FILED DECEMBER 18, 2014**

Appellant, Telly Williams, appeals from the order entered in the Philadelphia County Court of Common Pleas denying his first Post Conviction Relief Act[1] ("PCRA") petition. Appellant asserts that the PCRA court erred when denying his claims that direct appeal counsel was ineffective for failing to challenge: (1) the pretrial court's denial of the motion to suppress physical evidence and the (2) denial of his Pa.R.Crim.P. 600 motion to dismiss. We affirm.

The PCRA court summarized the facts of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

> On May 25, 2005 shortly after midnight, there was an undercover drug investigation at the corner of 21st and Titan Streets in South Philadelphia. The undercover officers observed Appellant outside a corner bar engaged in a drug related transaction with an unidentified male who was on a bicycle. When the plainclothes officers approached to investigate, both males fled. The man on the bike got away. The officers caught Appellant after a foot pursuit during which they observed him discard a loaded semi-automatic handgun which was later found to have an obliterated serial number. This weapon was seized by a police officer from the vacant lot onto which it had been thrown by Appellant. When [Appellant] was searched the police seized two green and five clear ziplock packets containing cocaine. Evidence was also introduced that [Appellant] had no license, nor permit to carry the gun.

PCRA Ct. Op., 3/26/14, at 2.

Prior to trial, the court denied Appellant's motions to suppress evidence and to dismiss pursuant to Pa.R.Crim.P. 600.[2] The jury found Appellant guilty of persons not to possess firearms, carrying a concealed firearm without a license, carrying firearms on public streets in Philadelphia, and possession of controlled substances. Appellant was sentenced to an aggregate term of six to twelve years' imprisonment. He filed a timely post-sentence motion which was denied on November 16, 2006.

On direct appeal, this Court affirmed his judgment of sentence. **Commonwealth v. Williams**, 3530 EDA 2006 (unpublished memorandum) (Pa. Super. Sept. 5, 2008). The Pennsylvania Supreme Court denied his

---

[2] The motions were litigated before the Honorable William J. Mazzolla on March 16, 2006 and July 31, 2006 respectively.

petition for allowance of appeal. ***Commonwealth v. Williams***, 524 EAL 2008 (Pa. 2010). Appellant filed a timely *pro se* PCRA petition.[3] Counsel was appointed to represent him and was permitted to withdraw prior to filing an amended petition. Current counsel was appointed and filed an amended PCRA petition. The PCRA court dismissed the petition without a hearing. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.[4]

Appellant raises the following issues for our review:

Is [Appellant] entitled to post-conviction relief in the form of a new trial or a remand for an evidentiary hearing since the trial court erred when it denied relief in the absence of an evidentiary hearing?

A. Is [Appellant] entitled to post-conviction relief in the form of a new trial as a result of the ineffectiveness of appellate counsel for failing to raise in the direct appeal

---

[3] Appellant's judgment of sentence became final on June 16, 2010, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal. ***See*** 42 Pa.C.S. § 9545(b)(3) (providing "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review[ ]"). Appellant had until June 16, 2011, to file his PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1) (providing PCRA petition must be filed within one year of date judgment becomes final). Therefore, because he filed his PCRA petition on June 28, 2010, his petition is timely.

[4] We note with disapproval the Commonwealth's reliance in the argument section of its brief upon its previously filed motion to dismiss and the PCRA court's opinion. ***See Commonwealth v. Dodge***, 77 A.3d 1263, 1274-75 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014).

the issue of the pretrial court's denial of the motion to suppress physical evidence?

B. Is [Appellant] entitled to post-conviction relief in the form of an arrest of judgment or a remand for an evidentiary hearing as a result of the ineffectiveness of appellate counsel for failing to raise in the direct appeal the issue of the pretrial court's denial of the motion to dismiss under Pa.R.Crim.P. 600?

Appellant's Brief at 4.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings." ***Commonwealth v. Lane***, 81 A.3d 974, 977 (Pa. Super. 2013) (citations omitted), *appeal denied*, 92 A.3d 811 (Pa. 2014).

[C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. **A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs.** Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

***Commonwealth v. Perry***, 959 A.2d 932, 936 (Pa. Super. 2008) (punctuation marks and citations omitted) (emphasis added).

Additionally, a PCRA petitioner must demonstrate that the issues raised by his petition have not been waived. ***Commonwealth v. Steele***, 961 A.2d 786, 796 (Pa. 2008). "A PCRA claim is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding. 42 Pa.C.S. § 9544(b)." ***Id.*** (quotation marks omitted). A PCRA claim of trial error, which was not raised in a direct appeal, is generally not a basis for relief unless an independent ineffective assistance of counsel claim is presented. ***See id.*** at 799.

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted).

First, Appellant contends appellate counsel was ineffective for failing to raise in the direct appeal the trial court's denial of his motion to suppress physical evidence. Appellant avers "undercover officers observed [him] outside a corner bar engaged in what they believed to be a drug transaction with an unidentified male on a bicycle. . . . **When the plainclothes police**

**officers approached to investigate, both males fled**." Appellant's Brief at 21 (emphasis added). Appellant concedes he was apprehended by the police officers "after a foot pursuit during which **they observed him discard a loaded semi-automatic handgun** which was later found to have an obliterated serial number." *Id.* at 21-22 (emphasis added). He avers that the "police lacked reasonable suspicion to justify chasing, stopping and searching" him. *Id.* at 40. Appellant argues that "[t]he mere fact that **a commercial transaction was observed** does not mean that criminal activity was afoot." *Id.* at 41 (emphasis added). Appellant claims that "[e]ven if the [transaction] occurred in **a high crime area**," that fact is not determinative. *Id.* (emphasis added). He states "any neighborhood in a large urban environment such as Philadelphia will have a fair share of crime and can be characterized as a 'high crime area.'" *Id.* Appellant contends the police lacked probable cause to arrest or search him. *Id.* at 42. He avers that an exchange of items "between citizens in a public place, even a place known to be frequented by drug traffickers, does not, without more, establish probable cause to arrest those citizens." *Id.* at 43.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the

suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Moreover, with respect to our scope of review on suppression issues, our Supreme Court has held: "it is appropriate to consider all of the testimony, not just the testimony presented at the suppression hearing, in determining whether evidence was properly admitted."

*Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013)

(citations omitted).

In *Clemens*, this Court opined:

As we have explained, "[t]he Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures. To safeguard this right, courts require police to articulate the basis for their interaction with citizens in [three] increasingly intrusive situations." Our Supreme Court has categorized these three situations as follows:

The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry v. Ohio*[, 392 U.S. 1 (1968)] and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

*Commonwealth v. Smith*, [ ] 836 A.2d 5, 10 ([Pa.] 2003).

. . . As noted above, an investigative detention is valid when it is supported by reasonable suspicion.  In the words of the Pennsylvania Supreme Court:

Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances.  In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot.  In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light **of the officer's experience** and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Id.* at 378-79 (citation omitted) (emphasis added).

In **Clemens**, the defendant contended the police lacked reasonable suspicion to believe he engaged in a drug transaction arguing the officer "saw nothing more than two men greet each other with a handshake or a fistbump[, which is an action that is] completely consistent with innocent behavior." *Id.* at 379.  This Court disagreed and opined:

[T]he record clearly supports the suppression court's conclusion that, at the time of the investigative detention, [the officer] possessed reasonable suspicion to believe that [the defendant] had just sold narcotics.  First, **although [the officer] testified that he did not see the particular objects that were being passed between [the defendant] and the unidentified man, [he] plainly testified that, based upon his experience and training, he witnessed [the defendant] engage in a hand-to-hand narcotics transaction** with the other individual.  Thus, [the defendant] is factually incorrect to

claim that "[the officer] saw nothing more than two men greet each other with a handshake or a fistbump."

Further, viewing the totality of the circumstances surrounding the hand-to-hand transaction, we agree with the suppression court that "**an objectively reasonable police officer would have reasonably suspected criminal activity was afoot.**" Indeed, during the suppression hearing, [the officer] testified that he was **extremely familiar with the** [**area where the transaction occurred**] and was **extremely experienced in narcotics investigations**. According to [the officer], his **years of experience and training had taught him that the hand-to-hand transaction he witnessed was most likely a narcotics transaction**. . . . [*S*]*ee also* [***Commonwealth v. Holmes***, 14 A.3d 89, 95 (Pa. 2011)] ("In assessing the totality of the circumstances, courts must afford due weight to the specific, reasonable inferences drawn from the facts **in light of the officer's experience**"). [The officer] also testified that the surrounding area was home to "nonstop" open-air narcotics sales. [***See also***] ***Illinois v. Wardlow***, 528 U.S. 119, 124, [ ] (2000) (holding "the fact that the **stop occurred in a 'high crime area'** [is] among the relevant contextual considerations in a ***Terry*** analysis").

\* \* \*

Given these "specific and articulable facts," we agree that "an objectively reasonable police officer would have reasonably suspected" that [the defendant] had sold narcotics to the unidentified man. As such, we agree that the investigatory detention was properly supported by reasonable suspicion.

*Id.* at 380 (footnote and some citations and alterations omitted) (emphases

added).

Probable cause exists where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the **suspect "has committed or is committing a crime."**

- 9 -

"In determining whether probable cause exists, we apply a totality of the circumstances test."

***Commonwealth v. Delvalle***, 74 A.3d 1081, 1085 (Pa. Super. 2013) (citations omitted) (emphasis added).

Instantly, the trial court opined:

> Appellant's first claim is that Appellate Counsel was ineffective for failing to challenge, on appeal, the pre-trial denial of his motion to suppress. Prior to trial Appellant sought to suppress evidence of drugs, money and a gun seized during the incident. A hearing on the motion was conducted on March 16, 2006 before the Honorable William Mazzolla. At the conclusion of the hearing Judge Mazzolla denied the motion.
>
> \* \* \*
>
> Clearly, based upon [the] facts, [the court] properly denied the motion to suppress. After observing what he reasonably believed to be a drug transaction, the officer ha[d] reasonable suspicion to stop and detain Appellant.
>
> Additional facts of Appellant's subsequent flight and his discarding a gun gave rise to probable cause to arrest Appellant, retrieve the gun and search Appellant incident to the arrest.

Trial Ct. Op. at 4-5. We agree no relief is due.

Officer Glen Keenan testified at the suppression hearing that he had been employed by the Philadelphia Police Department for almost nineteen years as an officer in the 17th Police District. N.T., 3/16/06, at 8. His present assignment was narcotics enforcement. ***Id.*** He had the plainclothes assignment for twelve years. ***Id.*** at 9. On the day of the incident he was

assigned a detail with Officer Charles Wells, Officer Greg Stevens, and

Officer Lewis Gregg in the location of 21st and Titan Streets. *Id.* at 9-10.

> [Commonwealth]: Did you go towards that location by accident, or was that intentional based upon earlier reports?
>
> A: We go by the 12-52 Bar most likely 10 to 12 times in the evening because it's **very heavy drug sales** outside there, along with gambling and weapons. . . .
>
> Q: Generally speaking, **is that bar located in what you would define as a high crime area**?
>
> A: **High drug and crime**, yes.
>
> Q: And is that primarily why you were patrolling there in your plainclothes?
>
> A: That's correct.
>
>          \*    \*    \*
>
> Q: What was [Appellant] doing as you observed him for the first time?
>
> A: He was standing on the corner right outside the bar talking to a male on a bicycle.
>
> Q: Could you generally describe the male on the bicycle?
>
> A: He was an older gentleman . . . .
>
> I didn't get a really good look at him.
>
> My partner slowed the car up as we came down 21st Street because we always looked to the left. **They sell drugs off the porch there, and right in front of the bar**, which would be directly in front of me, they sell right in front of the bar.
>
> And also right to the—to the right of the bar in the little street we always slow down. . . . **At which time I saw**

**[Appellant] receive money from a male on the bike. He reached into his pocket and pulled out a clear plastic baggie, handed the money [sic[5]] to that male.**

I told my partners, "Grab them guys," at which time—Officer Stevens was driving—he stopped right at the corner.

[Appellant] went westbound down Titan Street.

The male on the bike went southbound on 21st Street—

Q: . . . At the point where the two men left the area, [Appellant] on foot and the older gentleman on the bicycle—

A: Right.

Q: —had you or any of your partners said anything to either or both of those two men?

A: No. I didn't hear anybody say anything.

I didn't have a chance (sic) say a word because by the time we got the car stopped, he ran in front of the car, he was running down the sidewalk on Titan Street.

**I saw him reach into his waistband, at which point he threw a gun,** it hit a wall, it fell into an empty lot. I yelled, "Gun." I heard Officer Gregg yelling, "I'm coming back; I'm coming back."

Officer Stevens and Officer Wells went straight down Titan Street. They passed [Appellant], which is something we normally do so we can box him in, at which time I stayed with the gun because it's right across from the bar; I was afraid somebody was going to come from the bar and go over and get it.

**I saw [Appellant] trying to get into a door, and the people inside this house were pushing him back**

---

[5] We presume the officer meant handed the **baggie** to the male.

**out, at which time Officer Wells and Officer Stevens stopped him. I went and recovered the weapon.**

I went down, and I saw Officer Wells recover a clear plastic baggie from [Appellant], two green-tinted packets containing a large chunky off-white substance, and five smaller packs of crack cocaine.

And then he also recovered $20.00 in U.S. currency.

I cleared the weapon, and we took [Appellant] to 24th and Wolf for processing.

\* \* \*

Q: And as **a result of your previous experience and training as a law enforcement officer, did you have reason to suspect that illegal activity was taking place** in this transaction between the two men?

A: From my belief from that area **I believe there was a narcotics sale being made.**

As we stopped the vehicle **they both fled**. Then I-I believed more thoroughly that there was something going on. And **then he threw the gun** against the wall.

\* \* \*

Q: You said that two of your partners made the apprehension as [Appellant] was endeavoring to get into a house?

\* \* \*

A: It was-I was looking down the street. [Appellant] was banging on the door to try to get in. People were-something stopped him from getting through the door, and my partners grabbed him.

\* \* \*

Q: At that point did you have the gun in your possession?

A: I was looking. I wanted to make sure he didn't come back towards us and get by my partner, Officer Gregg. As soon as I saw them physically grab him, I went over the fence, got the gun, and came back out.

Q: Was the gun loaded?

A: Yes, it was.

It was loaded with 11 live rounds; ten in the magazine, one in the chamber.

*Id.* at 10, 11-13, 14-15, 17, 18 (emphases added).

Officer Keenan, referring to the property receipt, indicated there was one clear plastic baggie containing "two large green tinted plastic packets and five clear plastic packets with red dots, all containing an off-white chunky substance, alleged crack-cocaine." *Id.* at 21. The plastic bag was consistent with the way narcotics are packaged for sale. *Id.* at 61. The trial court denied the motion to suppress. *Id.* at 63.

As in *Clemens*, in the case *sub judice*, the officer explained that based upon his experience, he saw a drug transaction between Appellant and another male. He was experienced in narcotics investigations and was familiar with the high crime area where the transaction took place. Additionally, the officer saw Appellant discard a gun and flee. We agree with the PCRA court that the officers had reasonable suspicion to suspect Appellant had sold narcotics to the unidentified male. *See Clemens*, 66 A.3d at 378-80. Based upon the totality of the circumstances in the instant case, the officers had a sufficient basis upon which to believe that Appellant

had committed a crime, and thus, there was probable cause to arrest him. *See Delvalle*, 74 A.3d at 1085. The record supports the findings of the suppression court. *See Lane*, 81 A.3d at 977. Appellate counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Perry*, 959 A.2d at 936.

Lastly, Appellant contends appellate counsel was ineffective for failing to raise the issue of the pretrial court's denial of his motion to dismiss pursuant to Pa.R.Crim.P. 600. Appellant's Brief at 52. He avers that the Commonwealth failed to exercise due diligence. *Id.* at 53. Appellant claims the July 31, 2006 trial date was beyond the amended run date of June 26, 2006.[6] *Id.*

"The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party." *Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*) (punctuation omitted).

> Rule 600 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part, as follows:
>
> (A) (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

---

[6] We note that Appellant refers to the amended run date as June 26, 2007, which we presume is a typographical error.

(B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

\* \* \*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) **the unavailability of the defendant or the defendant's attorney**;

(b) **any continuance granted at the request of the defendant or the defendant's attorney**.

\* \* \*

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the

Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 600[7]

As the text of Rule 600(A) makes clear, the mechanical run date comes 365 days after the date the complaint is filed. We then calculate an adjusted run date pursuant to Rule 600(C). . . .

Pursuant to Rule 600(A) and (C), we calculate the mechanical and adjusted run dates as follows:

The mechanical run date is the date by which the trial must commence under [Rule 600]. It is calculated by adding 365 days (the time for commencing trial under [Rule 600] ) to the date on which the criminal complaint is filed. As discussed herein, the mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.* at 1101-02 (footnote and citations omitted) (emphases added).

Instantly, the PCRA court opined:

The instant criminal complaint was filed on May 25, 2005. Trial should have commenced pursuant to Rule 600 within 365 days: on or before May 25, 2006. Trial commenced on August 1, 2006, sixty-eight (68) days after that mechanical run date. The record demonstrated that the case previously was called for trial on August 8, 2005, well before the 365 day deadline. Appellant's counsel, however, was unavailable and requested a continuance. The case was continued until February 13, 2006. Pursuant

---

[7] We note that Rule 600 was rescinded in 2012 and new Rule 600 adopted.

> to Pa.R.Crim.P. 600(c)(3)(b) this entire 189 day period, from August 8, 2005 until February 13, 2006 was excludable from the Rule 600 computation. Excluding that period of time from the Rule 600 computation demonstrated that Appellant was tried timely.

PCRA Ct. Op. at 5. We agree no relief is due.

We find the record belies Appellant's contention that the Commonwealth did not act with due diligence. As the PCRA court opined, the 189 day period resulting from counsel's request for a continuance is excludable from the Rule 600 computation; therefore, Appellant was timely tried. **See** Pa.R.Crim.P. 600(C)(3)(a)-(b). Accordingly, we find the trial court did not abuse its discretion in denying the motion to dismiss pursuant to Rule 600. **See Ramos**, 936 A.2d at 1100. Because the underlying claim has no merit, appellate counsel was not ineffective for failing to raise the issue on direct appeal. **See Perry**, 959 A.2d at 936.

We hold the PCRA court's findings are supported by the record and without legal error. **See Lane**, 81 A.3d at 977. We discern no abuse of discretion in dismissing the PCRA petition without an evidentiary hearing. **See Wah**, 42 A.3d at 338. Accordingly, we affirm the order dismissing the PCRA petition.

Order affirmed.

J. S52007/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2014