J-S02005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MAHMOUD REDDY | |
| Appellant | No. 2493 EDA 2013 |

Appeal from the Judgment of Sentence June 26, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002109-2010

BEFORE: MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY MUNDY, J.: **FILED APRIL 23, 2015**

Appellant, Mahmoud Reddy, appeals from the June 26, 2013 judgment of sentence of three to ten years' incarceration, imposed following his conviction by a jury of possession of a controlled substance, to wit crack cocaine, with intent to deliver (PWID).[1] After careful review, we affirm Appellant's conviction but are constrained to vacate and remand for resentencing.

The trial court summarized the facts, from the testimony adduced at trial, as follows.

> Philadelphia Police Officer Gerald Passalacqua, a drug enforcement officer since 1998, a veteran of "thousands of narcotics surveillances" and credited with over 10,000 narcotics arrests, testified that on

---

[1] 35 P.S. § 780-113(a)(30).

January 19, 2010, he was assigned to the Philadelphia Police Department's Narcotics Strike Force. At approximately 10:00 p.m., he was in plainclothes and in an unmarked police car with his partner, when he began conducting a surveillance at the corner of 56th Street and Wyalusing Avenue in the City of Philadelphia. He described the corner as being well lit and the neighborhood as being primarily residential.

He testified that at approximately 10:15 p.m. he observed [Appellant] exit a bar on the northwest corner, approximately 45 feet away from his position. After approximately a minute, a car approached [Appellant]. A male, later identified as Mr. Hobson, exited the vehicle and walked over to [Appellant]. After a brief conversation between the two men, Mr. Hobson handed [Appellant] money. In return, [Appellant] reached into the pocket of his []blue-hooded sweatshirt and withdrew a clear plastic sandwich baggie, from which he removed an item and handed it to Mr. Hobson. Officer Passalacqua then radioed his back-up officers instructing them to stop Mr. Hobson's vehicle.

While still in Officer Passalacqua's view and in full view of [Appellant], Officer Garnett, in a marked police vehicle, stopped Mr. Hobson approximately one block away and took him into custody. On seeing this, Officer Passalacqua directed his back-up officers to also take [Appellant] into custody. In response, Officer McCauley approached [Appellant] who, on seeing him, turned and ran back into the bar with Officer McCauley in pursuit and Officer Rodriguez following close behind.

In concluding his testimony, Officer Passalacqua testified that Commonwealth Exhibit C-12, a clear plastic bag, was similar to the one he observed [Appellant] remove from his pocket. It was stipulated by and between counsel that the Commonwealth's Exhibit C-12 was a clear plastic bag containing eight "black Ziplock packets with an off-white chunky powder" and that one of the packets

- 2 -

"tested positive for cocaine." It was also stipulated that the total weight of the contents of all eight packets was 3.155 grams.

Police Officer Erick Garnett, a 17 year veteran police officer, testified that on the evening of January 19, 2010 he was working in full uniform as back up investigating illegal sales of narcotics. At approximately 10:20 p.m., at the direction of Officer Passalacqua, he stopped a Burgundy Toyota at 56th Street and Girard Avenue and recovered one clear packet, which later tested positive for cocaine, from the occupant, William Hobson.

Police Officer Joseph McCauley, a 17 year veteran police officer, testified that on the evening of January 19, 2010 he was working in an unmarked vehicle in full uniform as back up investigating illegal sales of narcotics, in the area of 56th Street and Wyalusing Avenue. At approximately 10:15 p.m., he received a radio call from Officer Passalacqua "to move in and effect the arrest of persons he observed in narcotics transactions." As he approached [Appellant], [Appellant] turned and ran into the bar. Following him into the bar, Officer McCauley observed [Appellant] toss a clear plastic bag into a trash can just inside the entrance. After taking [Appellant] into custody, Officer McCauley recovered $428 in currency from his person.

Police Officer Mauricio Rodriguez, a 16 year veteran of the Philadelphia Police Narcotics Strike Force, testified that on January 19, 2010, at approximately 10:15 p.m., he was working as a backup officer in full uniform and marked police car, when he received a radio call from Officer Passalacqua "to stop a male that was selling -- allegedly was selling narcotics at the -- outside the, bar, outside the bar at 56th and Wyalusing." On arriving he followed Officer McCauley into the bar and was told to search the trash can for an item Officer McCauley had seen [Appellant] discard. On shining his flashlight into the trash can, Officer Rodriguez recovered a clear plastic bag in plain sight.

> Officer Rodriguez further testified that the Commonwealth's Exhibit C-12 was the clear plastic bag he recovered from the trash can inside the bar.

Trial Court Opinion, 5/21/14, at 4-6 (citations omitted).

The police arrested Appellant and charged him with PWID. On June 30, 2010, Appellant filed an omnibus pre-trial motion, including a motion to suppress evidence.[2] A hearing on Appellant's motion to suppress was held before the Honorable Daniel J. Anders on July 8, 2010. Officer Passalacqua was the only Commonwealth witness to testify at the hearing, and Appellant did not present any evidence. At the conclusion of the hearing, Judge Anders recited his findings of fact and conclusions of law before denying Appellant's motion. The matter proceeded to a jury trial held March 26-28, 2013. The jury found Appellant guilty of the sole charge of PWID.[3] On June 26, 2013, the trial court sentenced Appellant to a term of incarceration of three to ten years, applying the mandatory minimum sentence pursuant to 18 Pa.C.S.A. § 7508(a)(3)(i). Appellant filed no post-sentence motion. Appellant file a timely *pro se* notice of appeal on July 26, 2013. On August

---

[2] The motion is not included in the certified record.

[3] The trial and sentencing were presided over by the Honorable Charles J. Cunningham, III.

26, 2013, the trial court appointed Jennifer Ann Santiago, Esquire, to represent Appellant in the instant appeal.[4]

On appeal, Appellant raises the following issues for our consideration.

> A. Did the court err in denying Appellant's motion to suppress?
>
> B. Did the Commonwealth prove beyond a reasonable doubt the element of each crime that appellant was convicted of?

Appellant's Brief at 3.

In his first issue, Appellant challenges the suppression court's denial of his suppression motion based on its conclusion that the police officers had reasonable suspicion or probable cause to detain him. *Id.* at 13. When reviewing a challenge to a trial court's denial of a suppression motion, we observe the following principles.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by

---

[4] Appellant and the trial court have complied Pennsylvania Rule of Appellate Procedure 1925. Appellant filed an initial rule 1925(b) statement as part of his "Motion for an Extension to File a Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b)". The trial court granted the extension, but no amended statement was filed by Appellant.

the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Garibay*, 106 A.3d 136, 138-139 (Pa. Super. 2014) (*en banc*), *quoting* *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).[5]

The Commonwealth and the trial court contend Appellant's suppression challenge is waived for lack of specificity in his Rule 1925(b) concise statement. Commonwealth's Brief at 6; Trial Court Opinion, 5/21/14, at 6. Appellant's Rule 1925(b) statement included the following description of this issue. "The [suppression court] erred when it denied Appellant's motion to

---

[5] Our Supreme Court has recently clarified our scope of review when considering a challenge to a trial court's suppression ruling as it relates to "the extent of the record that the appellate court consults when conducting that review." *In re L.J.*, 79 A.3d 1073, 1080, (Pa. 2013). The Supreme Court held that such review is limited to the suppression hearing record, and "it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the suppression record, absent a finding that such evidence was unavailable during the suppression hearing." *Id.* at 1085. Because prior cases held that a reviewing court could consider the trial record in addition to the suppression record, the Supreme Court determined that the more limited scope announced in *In re L.J.* would apply prospectively to cases where the suppression hearing occurred after October 30, 2013. *Id.* at 1088-1089. Instantly, the subject suppression hearing was held on July 8, 2010. Accordingly, our scope of review includes the trial testimony in this case.

suppress." Appellant's Motion for an Extension to File a Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 10/1/13, at 1, ¶ 1.

> Pennsylvania Rule of Appellate Procedure 1925(b)(4) provides in pertinent part: "The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). The comment to this subsection acknowledges that vagueness is a "very case specific inquir[y]." However, the comment explains,
>
> > The more carefully the appellant frames the Statement, the more likely it will be that the judge will be able to articulate the rationale underlying the decision and provide a basis for counsel to determine the advisability of appealing that issue. Thus, counsel should begin the winnowing process when preparing the Statement and should articulate specific rulings with which the appellant takes issue and why.
>
> Pa.R.A.P. 1925, *cmt.*

**Commonwealth v. Postie**, --- A.3d ---, 2015 WL 663437 at *5-6 (Pa. Super. 2015) (footnote omitted).

> We caution Appellant that this Court has found claims waived on appeal for failure to specify the error alleged. **See Commonwealth v. Rolan**, 964 A.2d 398, 409–10 (Pa. Super. 2008); **see also Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011), *appeal denied*, 32 A.3d 1275 (Pa. 2011) ("[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all. The court's review and legal analysis can be fatally impaired when the court has

- 7 -

> to guess at the issues raised.") (citation and internal quotation marks omitted).  [] [H]owever, Pa.R.A.P. 1925(b)(4)(v) provides that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court[.]"

***Commonwealth v. Garvin***, 50 A.3d 694, 697, n. 5 (Pa. Super. 2012).

Instantly, the issues developed by Appellant in his brief are the same as those he advanced during the suppression hearing and as those addressed by the suppression court and the trial court.  We therefore decline to find waiver, and address the merits of Appellant's claim.

Appellant's specific claim is that the Commonwealth, through the testimony of Officer Passalacqua, failed to establish the police had probable cause to arrest Appellant because the officer's experience was limited and lacked a nexus with the officer's observations, which were imprecise relative to the transaction between Appellant and Hobson.  Appellant's Brief at 14-15.

> Looking to the factors for probable cause, the trial court erred in denying the motion to suppress.  First, and most importantly, the officer testified that he had only been with the Narcotics Strike Force for two months prior to this arrest and was completely unfamiliar with the area of 56th and Wyalusing.  … Given that Passalacqua could not remotely describe the object for the court, it would be a mere guessing game as to what Appellant allegedly handed to the black male.  There was absolutely no correlation made between his training and this one alleged transaction.

***Id.***

- 8 -

"Both the United States and Pennsylvania Constitutions protect citizens against unreasonable searches and seizures. U.S. Const. Amend. IV; Pa. Const. Art. I, § 8. To be constitutionally valid, an arrest must be based on probable cause." *Commonwealth v. Smith*, 979 A.2d 913, 916 (Pa. Super. 2009) (citation omitted), *appeal denied*, 993 A.2d 901 (Pa. 2010).

> Probable cause exists where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Delvalle*, 74 A.3d 1081, 1085 (Pa. Super. 2013) (internal quotation marks and citations omitted). "The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require *only a probability,* and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (internal quotation marks and citations omitted, emphasis in original).

> The [Pennsylvania] Supreme Court, [in *Thomson*] held that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." [*Thompson*, *supra*] at 935. However, the *Thompson* Court cautioned courts that they "cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus

between his experience and the search, arrest, or seizure of evidence." *Id.* (quoting [*Commonwealth v.*]*Dunlap*, 941 A.2d [671,] 676 [(Pa. 2007)]). "Indeed, a factor becomes relevant only because it has some connection to the issue at hand." *Id.*

… *Thompson* involved a single hand-to-hand transaction. It was under those limited circumstances [] that the value of police experience became critical to the probable cause determination. Because the officer's observation of the lone transaction, by itself, did not create probable cause, the police officer's experience was necessary to determine whether probable cause existed. Per *Thompson*, that experience has value only if the officer can demonstrate a nexus between the experience and the observed behavior. However, the necessity of establishing that nexus diminishes if probable cause exists based solely upon the behavior that the officer observed. In determining whether probable cause exists:

The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important.

*Thompson*, 985 A.2d at 932 (citing *Commonwealth v. Lawson*, 309 A.2d 391, 394 [] ([Pa.] 1973)).

*Delvalle*, *supra* at 1085-1086.

Instantly, despite Appellant's attempt to diminish the degree of Officer Passalacqua's experience and its relevance to his specific observations, the suppression court found otherwise.

Police officer Passalacqua is an officer that has 17 years experience on the police force. He has

- 10 -

substantial training in the sales and distribution of narcotics. He has had more than 6,000 narcotics arrests and conducted hundreds of surveillance for drug activity. He is currently assigned for six months to the narcotics strike force. And previously, had three and a half years service in narcotics enforcement. In his view this was a class civic [sic] hand to hand transaction for narcotics.

He admitted that he is not familiar with the 5600-block of Wyalusing Ave. and has no knowledge about whether it's a high crime area or an area that's known for narcotics activity. He did testify that earlier that night at approximately one half block away he observed what he believed was another drug transaction that was occurring.

… [B]ased upon the time of the day, the movement of [Appellant] and Mr. Hobson, the length of time of their interaction, movement of [Appellant] after Mr. Hobson's arrest, police officer Passalacqua's training and experience as well as finding that there is a sufficient nexus between his training, experience and the observed transaction that there was probable cause in this matter to stop, detain and search [Appellant]. And as a result, that there was no forced abandonment when the seizure occurred.

N.T., 7/8/10, at 39-40.

We conclude the suppression court's findings are supported by the record and its legal conclusions are correct. While Officer Passalacqua was only attached to the drug task force for a short time, his overall experience with drug law enforcement was much more extensive, including specialized training, participation in 6,000 narcotics arrests, and hundreds of surveillances. *Id.* at 11-12. Additionally, Officer Passalacqua was able to observe Appellant remove a small object from a plastic baggie, which he

exchanged for cash from Hobson. *Id.* at 4-5, 19-20. Officer Passalacqua noted the quick duration of the transaction with the participants approaching, conversing, exchanging, and departing within less than a minute. *Id.* at 10. Further, Officer Passalacqua related his experience to his observations, providing a nexus through which to assess the relevance of his experience.

> [B]ased on, one, the first think [sic] I saw was the hand to hand transaction, the exchange of small objects for money, which I've seen numerous times in my career. It's a commonality in drug sales that I see that type of action. … Second, I base it on my vast experience in this area as it pertains to open air drug sales on the streets of Philadelphia.

*Id.* at 14.

Based on the foregoing, we discern no error by the suppression court in concluding the police had probable cause to detain Appellant after the observed transaction and arrest of Hobson. We conclude the suppression court's findings are supported by the record and that the totality of the circumstances, including Officer Passalacqua's observations viewed in the light of his experience, support its legal conclusions. *See Thompson*, *supra*; *Delvalle*, *supra*. Accordingly, Appellant's first issue affords him no relief.

Appellant next challenges the sufficiency of the evidence presented by the Commonwealth to prove him guilty of PWID. Appellant's Brief at 16.

> A claim impugning the sufficiency of the evidence presents us with a question of law. …

- 12 -

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (internal quotation marks and citations omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Instantly, Appellant claims the Commonwealth failed to present evidence establishing that he was ever in possession of the drugs found on

Hobson's person or of the drugs found in the trash can inside the bar where Appellant fled and was apprehended. Appellant's Brief at 17.

The elements of PWID are set forth by statute as follows.

**§ 780-113. Prohibited acts; penalties**

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

…

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

To sustain a conviction for PWID, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. If the contraband is not found on the appellant's person, the Commonwealth must prove that the appellant had constructive possession of the contraband, which has been defined as the ability and intent to exercise control over the substance. The Commonwealth may establish constructive possession through the totality of the circumstances.

*Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa. Super. 2011) (internal quotation marks and citations omitted), *appeal dismissed*, 54 A.3d 22 (Pa. 2012).

Appellant supports his argument based on a narrow and misleading account of the evidence. Appellant's Brief at 18-19. Appellant claims the

packets retrieved from the trashcan were in "clear packets" and the drugs found on Hobson were in a "black tinted packet," and the fact the packets are different "does not support the conviction." *Id.* at 19. This is a mischaracterization of the evidence. At trial, the parties stipulated the contraband found in the bar's trashcan "was one clear plastic bag with eight items, which [the police chemist] described as **black** Ziploc packets …." N.T., 3/26/13, at 72 (emphasis added). Thus, there was evidence correlating the item found on Hobson and the items found in the trashcan. Appellant also challenges the testimony of Officer McCauley, relative to his ability to observe Appellant discard an item into the trash, based on conflicting accounts of the various positions of the individuals and the trashcans. Appellant's Brief at 18-19. Such an argument addresses the credibility of the witnesses, which is the sole province of the factfinder. *Antidormi*, *supra*. As such, Appellant's claim is more akin to a challenge to the weight of the evidence. "Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." *Commonwealth v. Griffin*, 684 A.2d 589, 596 (Pa. Super. 1996) (citations omitted). We will not disturb those findings, which we

conclude are supported by the record. For these reasons, Appellant's second issue also fails.

Notwithstanding our disposition of Appellant's issues, we discern a legality of sentencing issue, which we address *sua sponte*. "[A] challenge to the legality of the sentence can never be waived and may be raised by this Court *sua sponte*." **Commonwealth v. Wolfe**, 106 A.3d 800, 801 (Pa. Super. 2014). As noted above, the trial court imposed a mandatory minimum sentence of three years' incarceration based on a prior offense and the weight of the cocaine possessed pursuant to 18 Pa.C.S.A. § 7508(a)(3)(i).[6] In light of recent precedent interpreting the import of the

_____

[6] The statute provides as follows.

**§ 7508. Drug trafficking sentencing and penalties**

**(a) General rule.--**Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

…

(3) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves or is any salt, compound, derivative or preparation of coca leaves … shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

(i) when the aggregate weight of the compound or mixture containing the substance involved is at least

*(Footnote Continued Next Page)*

United States Supreme Court's ruling in ***Alleyne v. United States***, 133 S.

Ct. 2151 (2013), we conclude the trial court imposed an illegal sentence.

***See generally Commonwealth v. Newman***, 99 A.3d 86, 89 (Pa. Super.

2014) (*en banc*); ***Commonwealth v. Fennell***, 105 A.3d 13 (Pa. Super.

2014); ***Commonwealth v. Valentine***, 101 A.3d 801 (Pa. Super. 2014).

> [I]ssues pertaining to ***Alleyne*** go directly to the legality of the sentence.  []  A challenge to the legality of a sentence … may be entertained as long as the reviewing court has jurisdiction.  []  [I]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to

*(Footnote Continued)* ────────────────

> 2.0 grams and less than ten grams; … if at the time of sentencing the defendant has been convicted of another drug trafficking offense: three years in prison and $10,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity;
>
> …
>
> **(b) Proof of sentencing.--**Provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.
>
> …

18 Pa.C.S.A. § 7508.

correction. An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is *de novo* and our scope of review is plenary.

*Fennell*, *supra* at 15 (internal quotation marks and citations omitted).

*Newman* and *Valentine* concluded that unconstitutional portions of the similarly structured mandatory sentencing statutes at 42 Pa.C.S.A. §§ 9712, 9712.1, and 9713 were "essentially and inseparably connected," rendering the statutes unconstitutional in their entirety. *Newman*, *supra* at 101; *Valentine*, *supra* at 811. "Moreover, *Newman* makes clear that 'it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following *Alleyne*.'" *Valentine*, *supra* at 812, *quoting Newman*, *supra* at 102.

In *Fennell*, this Court, following the reasoning set forth in *Newman* and *Valentine*, found section 7508 facially unconstitutional and mandatory sentences imposed thereunder illegal even where the fact triggering the imposition of the mandatory minimum, to wit the weight of the drugs possessed by the defendant, was, as was the case here, stipulated to at trial. *Fennell*, *supra* at 20; *accord Commonwealth v. Vargas*, 108 A.3d 858, 876 (Pa. Super. 2014) (*en banc*). Accordingly, we are constrained to vacate the June 26, 2013 judgment of sentence and remand for resentencing in accordance with this memorandum.

In sum, we conclude the suppression court committed no error in denying Appellant's suppression motion on the basis that the police had probable cause to arrest Appellant. We further conclude the evidence was sufficient to establish Appellant possessed the seized contraband and sustain his conviction for PWID. Accordingly, we affirm appellant's conviction. However, we vacate the June 26, 2013 judgment of sentence as illegal, and remand for resentencing, without consideration of the mandatory minimum, consistent with this memorandum.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/2015