COMMONWEALTH of Pennsylvania, Appellee

v.

Roberto DELVALLE, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 22, 2013.

Filed Aug. 28, 2013.

Richard T. Brown, Jr., Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: OLSON, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Roberto Delvalle ("Appellant") appeals from the September 9, 2011, judgment of sentence. We affirm.

In its Pa.R.A.P. 1925(a) opinion, the trial court set forth the salient facts of this case as follows:

On October 30, 2010, two undercover Philadelphia police officers in "plainclothes" conducted a surveillance for drug sales beginning at approximately 3:45 p.m. From a confidential location, officer Eric Crawford used binoculars to observe [Appellant] from a distance of 50 to 55 feet.

The officer observed co-defendant Maria Melendez walk up to [Appellant], speak with [Appellant], and hand [Appellant] small items retrieved from the pocket of her hooded sweatshirt.

[Appellant] immediately placed those items down the front of his pants. Melendez walked 20 to 30 feet away from [Appellant] and stood in front of a rowhouse.

Officer Crawford saw a woman walk up to [Appellant] and speak with [Appellant]. As they spoke, [Appellant] pointed to Melendez. The woman immediately walked to Melendez where she spoke with Melendez, handed Melendez money, and was given small items by Melendez[,] which Melendez retrieved from the pocket of her hooded sweatshirt. During the next 17 minutes, the officer saw three more individuals have identical interactions with [Appellant] and Melendez. Each person walked up to [Appellant] and spoke with [Appellant]. As they spoke, [Appellant] pointed to Melendez. Each person then immediately walked to Melendez where they spoke with Melendez, handed Melendez money, and were given small items by Melendez[,] which Melendez retrieved from the pocket of her hooded sweatshirt. Officer Crawford was unable to leave his confidential location because he was working as back up to his partner, Officer Torres,[1] who was observing other narcotic transactions from the same con-

---

* Retired Senior Judge assigned to the Superior Court.

1. Officer Torres' first name does not appear in the notes of testimony.

fidential location. Officer Crawford was also unable to have other officers stop the people interacting with Melendez and [Appellant] because those officers were backing up Officer Torres in his simultaneous drug investigation. When Officer Torres ended his investigation, Officer Crawford had two officers stop [Appellant] and Melendez. [Appellant] had two "bundles" of heroin in the front of his pants. Each bundle contained 14 packets of heroin with the word "Moon Dust" written on the packet. Melendez also had two "bundles" of heroin in the pocket of her hooded sweatshirt. One bundle contained 14 packets of heroin and the other bundle contained seven packets of heroin. Each packet had the word "Moon Dust" written on it. Melendez also had $59 in her possession. On the day that Officer Crawford watched [Appellant] and Melendez, he was assigned to the narcotic enforcement team. He had been assigned there for four years. Officer Crawford knew the block where [Appellant] was arrested to be "a high drug traffic area for specifically heroin and crack cocaine."

Officer Crawford conducted 30 to 40 surveillances for narcotic transactions at the location where [Appellant] was arrested prior to [Appellant's] arrest. Those surveillances led to 75 to 100 arrests as a result of drug transactions "very similar" to the interactions which [Appellant] and Melendez were a part of. Prior to [Appellant's] arrest, Officer Crawford received training regarding the manner in which drugs are packaged, and the manner in which street level drug dealers distribute narcotics. Officer Crawford observed groups of two or more people working together to sell drugs approximately 100 times prior to arresting [Appellant]. Finally, Officer Crawford saw drug dealers stash narcotics in the front of their pants, *i.e.,* where heroin was recovered from [Appellant], well over 100 times.

[Appellant] testified at trial. He largely corroborated the Commonwealth's evidence. [Appellant] confirmed that: he was standing in the area testified to by police; he knew [Melendez]; he spoke with people while standing on the sidewalk; he gestured with his hands while speaking to people; and that he had drugs when the police stopped and searched him. Notably, [Appellant] first stated during cross-examination, "No, I didn't have drugs on me." [Appellant] then stated, "I want to tell the truth. I had drugs."

Trial Court Opinion ("T.C.O."), 5/4/2012, at 3–5 (references to notes of testimony and footnote omitted).

Appellant was charged with possession of a controlled substance with the intent to deliver ("PWID"),[2] possession of a controlled substance,[3] and criminal conspiracy.[4] Appellant appeared for trial on these charges on September 9, 2011. Prior to trial, Appellant moved to suppress the heroin recovered from his October 30, 2010, arrest, contending that the police lacked probable cause to arrest him. Following a hearing, the trial court denied the motion. Appellant then waived his right to a jury trial, and proceeded with a non-jury trial. At the trial's conclusion, the trial court found Appellant guilty of all of the charges. Thereafter, Appellant was sentenced to three to six years' incarceration pursuant to the mandatory minimum sentence set forth in 18 Pa.C.S.

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–113(a)(16).

4. 18 Pa.C.S. § 903.

§ 7508(a)(7)(i), and a consecutive five-year period of probation.

On September 9, 2011, Appellant filed post-sentence motions alleging that the verdict was against the weight of the evidence and that the trial court erroneously applied the mandatory minimum sentence. On January 18, 2012, Appellant's post-sentence motions were denied by operation of law. On February 17, 2012, Appellant filed a notice of appeal. On March 29, 2012, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. On May 4, 2012, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises three issues for our consideration:

1. Did the court err in denying the motion to suppress, as the police were observing some other activity and officers did not stop the people they alleged to have been buyers, and they seized [Appellant] without any reason to believe that he had committed any crime?

2. Did the court err in denying the motion for a new trial because the verdict was against the weight of the evidence? The evidence that [Appellant] was no more than a buyer from Ms. Melendez was more credible than that [Appellant] was needed as any kind of carnival barker to attract buyers to Ms. Melendez, when Ms. Melendez was fully visible to potential buyers on the street and there is no evidence of any conversation or written agreement between the two. [Appellant] never accepted money or delivered any controlled substance to any of the other alleged buyers.

3. Did the court err in imposing the mandatory minimum sentence based on controlled substances allegedly possessed by Ms. Melendez, where there is no evidence [Appellant] ever controlled the heroin of Ms. Melendez? The heroin allegedly possessed solely by [Appellant] was less than one gram, and thus a guideline sentence (lower than the mandatory minimum) would have been the proper sentence.

Brief for Appellant at 2.

Appellant first argues that the trial court erred in concluding that the police had probable cause to support Appellant's arrest and subsequent search. When reviewing a challenge to a trial court's denial of a suppression motion, our standard of review is:

limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa.Super.2012) (quoting *Common-*

*wealth v. Jones,* 605 Pa. 188, 988 A.2d 649, 654–56 (2010)).

■ In an argument so brief that it avoids waiver by only the slimmest of margins,[5] Appellant contends that the police lacked probable cause to arrest and search him. Relying upon *Commonwealth v. Dunlap,* 596 Pa. 147, 941 A.2d 671 (2007), and *Commonwealth v. Thompson,* 604 Pa. 198, 985 A.2d 928 (2009), Appellant essentially maintains that the police in this case observed behavior that was not immediately identifiable as unlawful, and that the trial court improperly bootstrapped this behavior with the officer's experience to find probable cause. We disagree.

Probable cause exists where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the suspect "has committed or is committing a crime." *Thompson,* 985 A.2d at 931. "In determining whether probable cause exists, we apply a totality of the circumstances test." *Id.*

In *Dunlap,* our Supreme Court considered the impact that police training and experience had on determining whether probable cause existed to support an arrest where the police observed only a single hand-to-hand transaction of an unknown object for cash. The Court held that "police training and experience, *without more,* is not a fact to be added to the quantum of evidence to determine if probable cause exists, but rather a 'lens' through which courts view the quantum of evidence observed at the scene." 941 A.2d at 675 (emphasis in original).

In *Thompson,* our Supreme Court reconsidered its *Dunlap* holding. In *Thompson,* a police officer with nine years' experience was patrolling the streets in a high crime area. The officer observed the appellant hand money to another individual in exchange for a small object. *Thompson,* 985 A.2d at 930. Relying upon his experience, the officer believed that a drug transaction had just transpired. The officer stopped the appellant and recovered heroin from the appellant's pocket. *Id.* The Supreme Court, believing that the *Dunlap* holding lacked clarity, reversed course and held that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." *Id.* at 935. However, the *Thompson* Court cautioned courts that they "cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Id.* (quoting *Dunlap,* 941 A.2d at 676). "Indeed, a factor becomes relevant only because it has some connection to the issue at hand." *Id.*

Instantly, Appellant argues that his arrest was not supported by probable cause because Officer Crawford failed to establish a nexus between his extensive experience and his observations. Appellant's argument fails, for two reasons. First, *Thompson* involved a single hand-to-hand transaction. It was under those limited circumstances (as was also the case in *Dunlap* ) that the value of police experience became critical to the probable cause determination. Because the officer's observation of the lone transaction, by itself, did not create probable cause, the police officer's experience was necessary to determine whether probable cause existed. Per *Thompson,* that experience has value only if the officer can demonstrate a nexus between the experience and the ob-

5. *See* Pa.R.A.P. 2119(a).

served behavior. However, the necessity of establishing that nexus diminishes if probable cause exists based solely upon the behavior that the officer observed. In determining whether probable cause exists:

> The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important.

*Thompson*, 985 A.2d at 932 (citing *Commonwealth v. Lawson*, 309 A.2d 391, 394, 309 A.2d 391 (1973)).

Viewing the totality of the circumstances, with an eye toward the above considerations, it is clear to us that probable cause existed to arrest and search Appellant, even without considering Officer Crawford's experience. *Thompson* and *Dunlap* pertain to single hand-to-hand transactions. Here, there is much more. Officer Crawford observed Melendez approach Appellant and hand him small objects. Appellant placed those objects in the front of his pants, which certainly is a dubious place to store non-contraband items. Appellant then worked in tandem with Melendez to facilitate suspicious transactions. An individual would approach Appellant. Appellant would then direct that individual to Melendez. That person would then hand Melendez money. Melendez would then give that person an unknown object, which she retrieved from the pocket of her hooded sweatshirt. Unlike the circumstances in *Thompson* and *Dunlap*, this sequence of events did not happen once, but instead happened four times in fewer than twenty minutes, each transaction occurring in the same exact manner. Considering the fact that the neighborhood was considered to be a high

drug-transaction area, the suspicious secretion of the objects, the nature and location of the transactions, and the frequency and repetitiveness of the transactions, probable cause existed to warrant a reasonable police officer's belief that Appellant and Melendez were committing a crime, even without considering Officer Crawford's experience.

■ Second, even if the officer's experience was necessary to establish probable cause in this case, Officer Crawford's suppression testimony sufficiently created the nexus required by *Thompson*. Officer Crawford testified that he had conducted surveillance in that same location thirty to forty times, which produced seventy-five to one hundred drug arrests based upon very similar transactions. As a member of the narcotics enforcement team, Officer Crawford received training in how drugs are packaged, sold generally, and sold through the use of a partner. More importantly, in his experience, Officer Crawford had observed over one hundred people store drugs in the front of their pants, as Appellant did in the instant case. This particular experience informed his view that Appellant and Melendez were working together and selling drugs, even though Officer Crawford was unable to identify the objects being sold. Through this testimony, Officer Crawford established the requisite nexus between his experience and his observations to support the existence of probable cause.

Appellant next argues that the verdict was against the weight of the evidence. The entirety of Appellant's argument spans three sentences. Appellant does not cite a single case in support of his argument, nor does Appellant develop a factual argument in any substantive way. Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure provides that "[t]he argument shall ... have ... the particular

point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Failure by the appellant to discuss pertinent facts or cite legal authority will result in waiver. *Commonwealth v. Rhodes,* 54 A.3d 908, 915 (Pa.Super.2012). Consequently, Appellant's underdeveloped argument is waived.

■ Finally, Appellant argues that the trial court erred in applying the mandatory minimum sentence set forth in 18 Pa. C.S. § 7508(a)(7)(i). Section 7508(a)(7)(i) requires a trial court to impose a minimum sentence of three years in prison if the defendant has been convicted of PWID and the aggregate weight of heroin that the actor possessed with the intent to deliver exceeded one gram, but was less than five grams. *Id.* Appellant maintains that the trial court erred by aggregating the weight of the heroin seized from his person with the weight of the heroin seized from Melendez. Appellant possessed less than one gram of heroin on his person. Thus, Appellant contends, had the trial court not improperly added the heroin found on Melendez to the heroin that Appellant possessed, section 7508(a)(7)(i) would have been inapplicable. We disagree.

■ Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. *Commonwealth v. Leverette,* 911 A.2d 998, 1002 (Pa.Super.2006). Issues relating to the legality of a sentence are questions of law. *Commonwealth v. Ausberry,* 891 A.2d 752, 754 (Pa.Super.2006). Our standard of review over

such questions is *de novo,* and our scope of review is plenary. *See Leverette,* 911 A.2d at 1002.

The Commonwealth maintains that, because Appellant was convicted of criminal conspiracy and, therefore, criminally responsible for the illicit acts of a co-conspirator, the trial court correctly aggregated the weight possessed by both Appellant and Melendez. Our Supreme Court addressed the interplay between conspiracy and section 7508(a)(7)(i) in *Commonwealth v. Johnson,* 611 Pa. 381, 26 A.3d 1078 (2011). In *Johnson,* the appellant, over the course of a few weeks, arranged three different sales of heroin and Oxycontin tablets to an undercover police officer. *Johnson,* 26 A.3d at 1080–82. The officer would tell the appellant what he wanted, the appellant would arrange to get those drugs from a supplier, and then the appellant would deliver the drugs to the officer. Each sale involved a different supplier. *Id.* After the last sale, the appellant and two of his suppliers, Stoner and Wilson, were arrested. *Id.,* at 1082. Wilson's car was searched, revealing additional amounts of heroin. *Id.* No testimony was offered as to the total weight of heroin involved in the case, but the trial court estimated that the heroin the appellant sold to the officer on July 6, 2004 (the day of the arrest) was approximately 687 milligrams and that the heroin recovered from the car was 432 milligrams. *Id.,* at 1084.[6] Further, the trial court found that the appellant was in constructive possession of the heroin recovered from Wilson's car. Because those amounts combined exceeded

**6.** The trial court initially aggregated the amount of heroin sold on all three occasions to determine that the appellant met the weight required for the mandatory minimum sentence, but offered as an alternative basis the amount sold on July 6 plus the amount in the car. *Id.,* at 1083–84. This Court determined that, because these were three separate actions, the separate sales were separate crimes and the amounts could not be aggregated for sentencing purposes. *Id.,* at 1085.

one gram, the trial court applied the mandatory minimum sentence. *Id.*

A panel of this Court affirmed the sentence on the basis that the appellant had constructive possession of the heroin in Wilson's car. *Id.,* at 1085. Our Supreme Court reversed, holding that there was insufficient evidence to establish constructive possession of the drugs in Wilson's car. *Id.,* at 1094–95. The Commonwealth also asserted that the Court could affirm on the basis of the appellant's conspiracy conviction; the Court accordingly addressed whether that conviction would allow imposition of the mandatory minimum. The Supreme Court rejected the argument that a conspiracy conviction, in and of itself, was sufficient to invoke the mandatory minimum, because Section 7508 by its plain language applies only to violations of 35 P.S. §§ 780–113(a)(14), (30), or (37), and does not apply to conspiracy to commit those acts. *Id.,* at 1090–92.

More relevant to the instant case, the *Johnson* Court addressed the circumstances of conspiratorial culpability as they relate to the aggregation of the weight of drugs possessed by co-conspirators for mandatory minimum sentencing purposes. The *Johnson* Court seemingly recognized that the aggregate of weight possessed by co-conspirators may properly implicate the mandatory minimum sentence when the conspiracy is on-going. *Id.,* at 1092–93 (citing *Commonwealth v. Perez,* 931 A.2d 703, 708 (Pa.Super.2007)). However, the *Johnson* Court held that the testimony in that case demonstrated that the conspiracy between the appellant and Wilson was discontinued after the appellant delivered the heroin to the officer. *Id.* Thus, the *Johnson* Court did not find the mandatory minimum applicable. Because the conspiracy between the appellant and Wilson had concluded, the Court was able to distinguish the case from *Perez,* a case in which the

conspiracy was on-going, enabling the aggregation of weights. *Id.,* at 1093.

■ The *Johnson* Court's principal holding was that conspiracy alone was insufficient to support imposition of the mandatory minimum sentence. However, when a person is convicted of one of the enumerated convictions and is involved in an on-going conspiracy, the amounts of drugs attributed to all of the conspirators may be aggregated for purposes of applying the mandatory minimum. *Johnson* did not abrogate this general rule.

In *Perez,* an officer observed the appellant make three hand-to-hand sales in front of Maddox's house. 931 A.2d at 705. The officer also saw Maddox leave his house, walk to the appellant, and hand the appellant blue packets. The appellant then handed money to Maddox. After this exchange, Maddox sat in a car parked in front of his house and watched the appellant. When the appellant saw a marked police car, he walked to Maddox and handed Maddox the blue packets and money. *Id.* They then walked off together and were arrested soon thereafter. *Id.,* at 706. Upon arrest, the appellant had $8.00 and Maddox had $975.00. Thirteen packets of heroin were found in Maddox's car. When Maddox's house was searched, twenty-six packets of heroin were discovered. *Id.* The total amount of heroin recovered was approximately 1.145 grams, which sufficed for imposition of the mandatory minimum. *Id.,* at 706 n. 5. The appellant sold 0.3 grams in the three sales observed by the police, and 0.863 grams were recovered from Maddox's house. *Id.* The record did not indicate the weight of the heroin recovered from the car. *Id.,* at 706 n. 3.

On appeal, the appellant asserted that he was not in constructive possession of the heroin recovered from the house, and that there was insufficient evidence of a conspiracy. *Id.,* at 707. This Court held

that the Commonwealth did not need to prove constructive possession because the evidence was sufficient to prove the conspiracy between Maddox and the appellant. *Id.* at 709. This Court held that, when the conspiracy is on-going, "each co-conspirator [is] fully liable for all of the drugs recovered." *Id.* Therefore, the panel concluded that the mandatory minimum sentence applied.

Instantly, Appellant was convicted of conspiracy and PWID. PWID is one of the enumerated offenses to which the mandatory minimum applies. *See* 18 Pa. C.S. § 7508(a)(7). Thus, under *Johnson* and *Perez,* our task is to determine whether there existed an on-going conspiracy between Appellant and Melendez. If so, under *Perez,* conspiratorial culpability would apply and the mandatory minimum sentence was legally imposed because Appellant was responsible for all the drugs recovered, including those from his co-conspirator. Conversely, if the conspiracy had ended, then, under *Johnson,* Appellant would not be responsible for the drugs recovered from Melendez, and the mandatory minimum would have been applied in error.

After reviewing the record, we conclude that the record adequately showed an on-going conspiracy. Officer Crawford observed Melendez hand to Appellant objects that later were determined to be packets of heroin. The officer then observed Appellant and Melendez work in tandem to complete four separate drug transactions. When arrested, both Appellant and Melendez were found with additional heroin, suggesting that, had the arrests not occurred, the pair would have continued to distribute heroin on that same street. Additionally, the packets of heroin found on Appellant and Melendez were all stamped with the words "Moon Dust," further proving that Appellant and Melendez were working to-

gether. This evidence clearly indicated that the conspiracy was on-going. As such, the trial court properly aggregated the weight of the heroin found on Appellant with that found on Melendez. *See Johnson; Perez, supra.*

Judgment of sentence affirmed.