J-S57040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: O.T., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.T., a Minor | : | No. 3802 EDA 2016 |

Appeal from the Dispositional Order November 9, 2016
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, No(s): CP-51-JV-0000319-2016

BEFORE: PANELLA, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 18, 2017**

O.T., a minor, appeals from the dispositional Order entered following his adjudication of delinquency for possession of a controlled substance.[1] We vacate and remand for further proceedings.

The juvenile court set forth the relevant factual and procedural history in its Opinion, which we adopt as though fully set forth herein. *See* Juvenile Court Opinion, 3/17/17, at 1-4.[2]

O.T. now presents the following issues for our review:

A. Did not the [juvenile] court err in denying O.T.'s [M]otion to suppress marijuana and United States currency recovered

---

[1] *See* 35 P.S. § 780-113(a)(16) (prohibiting "[k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, … unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.").

[2] We additionally note that the total weight of the marijuana found on O.T.'s person was approximately 6 grams. *See* Juvenile Court Opinion, 3/17/17, Exhibit D (Seizure Analysis).

from him[,] where he was stopped, arrested and subjected to a search without reasonable suspicion or probable cause that criminal activity was afoot?

B. Did not the [juvenile] court err in [adjudicating] O.T. [delinquent] of possession of a controlled substance[,] as the evidence was insufficient to [adjudicate] O.T. [delinquent] of [this offense], in violation of 35 P.S. § 780-113(a)(16), in that O.T. was also charged with possession of a small amount of marijuana[,] in violation of 35 P.S. § 780-113(a)(31)[,[3]] and, as the latter offense was the more specific offense, the conduct enumerated by the more specific offense was excluded from the more general offense[,] so that O.T. could not be adjudicated delinquent of the more general offense?

Brief for Appellant at 4 (footnote added).

In his first issue, O.T. argues that the trial court erred by denying his Motion to suppress, where "the facts and circumstances, combined with the [arresting] officer's [Officer Patrick Greider (hereinafter, "Officer Greider")] knowledge and experience, fell short of establishing probable cause." *Id.* at 10.

This Court's standard of review of dispositional orders in juvenile proceedings is well-settled. The Juvenile Act grants broad discretion to juvenile courts in determining appropriate dispositions. In addition, this Court will not disturb the juvenile court's disposition absent a manifest abuse of discretion.

… When reviewing a suppression order[,] an appellate court is required to determine whether the record supports the

---

[3] Subsection 780-113(a)(31) provides that "[n]otwithstanding other subsections of this section, [the following acts are prohibited:] (i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale." 35 P.S. § 780-113(a)(31); *see also id.* (defining a "small amount of marihuana" as 30 grams or less).

suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*In re J.G.*, 145 A.3d 1179, 1184-85 (Pa. Super. 2016) (citations and paragraph breaks omitted).

Here, O.T. was subjected to a warrantless arrest, which must be supported by probable cause. *Id.* at 1185. "Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citation and quotation marks omitted); *see also id.* (stating that "we require *only a probability*, and not a *prima facie* showing, of criminal activity." (emphasis in original, citation and quotation marks omitted)). We apply a totality of the circumstances test in determining whether probable cause exists. *Id.*; *see also Commonwealth v. Colon*, 777 A.2d 1097, 1100-01 (Pa. Super. 2001) (stating that "all of the circumstances surrounding a transaction between citizens are to be considered in determining whether law enforcement officers have acted arbitrarily or have acted on the basis of probable cause."

(citation omitted)). Additionally, "[w]hen police observe citizens engaged in seemingly suspicious transactions on public streets, the determination of whether probable cause exists can be a difficult one." *Colon*, 777 A.2d at 1100.

In support of his claim that Officer Greider lacked probable cause, O.T. argues that "Officer Greider had only been on the police force for six months when he arrested O.T.[,]" and "had received no specific training … [on] how to recognize a drug transaction." Brief for Appellant at 14; *see also id.* at 14-15 (asserting that "Officer Greider had only made two arrests in his career prior to arresting O.T., and only one of those arrests was for [a drug possession offense]"). O.T. further contends that "the designation of the location in question as a 'high crime, high narcotics area' is dubious[,]" particularly where such designation was based on "the word of a brand new officer typically assigned to patrol SEPTA stations." *Id.* at 15. Finally, O.T. points out that Officer Greider did not observe O.T. engage in more than one drug transaction, and was not responding to a citizen's complaint or an informant's tip. *Id.* O.T. urges that "th[e Superior] Court has reiterated that an officer's observation of a lone transaction[,] *by itself*[,] does not create probable cause; rather, an officer's experience is necessary to determine whether probable cause existed." *Id.* at 15-16 (emphasis in original) (citing *Commonwealth v. Delvalle*, 74 A.3d 1081, 1085 (Pa. Super. 2013)).

In its Opinion, the juvenile court (1) addressed O.T.'s suppression challenge; (2) adeptly discussed the cases cited by O.T., and the law concerning probable cause in drug-trafficking cases with an observed hand-to-hand transaction on a public street; and (3) determined that Officer Greider possessed probable cause under the totality of the circumstances. *See* Juvenile Court Opinion, 3/17/17, at 5-8. The juvenile court's analysis is sound and supported by the record, and we agree with its legal determination. *See id.*; *see also Commonwealth v. Lawson*, 309 A.2d 391, 394 (Pa. 1972) (noting that, in analyzing whether probable cause to arrest exists following an observed hand-to-hand exchange of small objects for money, the location in which the seller concealed the contraband on his or her person is important, and holding that police had probable cause to arrest the defendant where, *inter alia*, she stored the small objects in her "bosom"). Accordingly, we affirm on this basis as to O.T.'s first issue, *see* Juvenile Court Opinion, 3/17/17, at 5-8, with the following addendum.

We are unpersuaded by O.T.'s claim that the purported lack of experience of Officer Greider particularly undermined the juvenile court's determination that the Officer possessed probable cause. In this regard, we agree with the juvenile court that "[j]ust as overwhelming narcotics experience cannot[,] in [] itself[,] sway the probable cause analysis, lack of experience cannot be deemed as a disqualifying factor in the probable cause analysis." Juvenile Court Opinion, 3/17/17, at 8; *accord Commonwealth*

*v. Banks*, 658 A.2d 752, 753 (Pa. 1995) (acknowledging that although an officer's lack of specific narcotics training can be a relevant factor in a probable cause analysis concerning an observed hand-to-hand drug transaction on a public street, the court must consider the totality of the circumstances). We further agree with the juvenile court that Officer Greider had "sufficient experience to provide a clear lens," where, *inter alia*, the Officer's "testimony described sufficient knowledge and experience regarding the area, the practice of drug dealers secreting items within their pants, and the other details of this particular transaction." Juvenile Court Opinion, 3/17/17, at 8. Accordingly, we discern no abuse of discretion or error of law by the juvenile court in denying the Motion to suppress, and O.T.'s first issue thus lacks merit.

In his second issue, O.T. contends that the juvenile court erred in adjudicating him delinquent of possession of a controlled substance, under 35 P.S. § 780-113(a)(16) (sometimes referred to as "K&I possession"), instead of possession of a small amount of marijuana, under 35 P.S. § 780-113(a)(31) (sometimes referred to as "SAM"). *See* Brief for Appellant at 9, 18-23. Specifically, O.T. asserts that because the amount of marijuana that he possessed was less than 30 grams,

> [t]he [juvenile] court erred in [adjudicating] O.T. [delinquent] of K&I [possession] because the statutory definition of SAM precludes a conviction for K&I [possession] where an individual possesses less than 30 grams of marijuana. Additionally, the [juvenile] court could only have [adjudicated] O.T. [delinquent] of SAM because it was the more specific offense.

*Id.* at 9.

Although O.T.'s issue is couched in terms of sufficiency of the evidence, the resolution of this issue actually requires us to interpret statutes. ***See Commonwealth v. Gerald***, 47 A.3d 858, 859 (Pa. Super. 2012). Accordingly, "because statutory interpretation implicates a question of law, our scope of review is plenary and our standard of review is *de novo*." ***Id.***

In support of his claim, O.T. relies on this Court's decisions in ***Commonwealth v. Gordon***, 897 A.2d 504 (Pa. Super. 2006), and ***Commonwealth v. Tisdale***, 100 A.3d 216 (Pa. Super. 2014). ***See*** Brief for Appellant at 22-23. This Court previously summarized these decisions as follows:

> In ***Gordon***, the defendant was found to be in possession of 8.75 grams of marijuana. Out of this one incident, he was charged with: (1) violation of 35 P.S. § 780-113(a)(31), proscribing the possession of a small amount of marijuana, and (2) violation of the general proscription against possession of a controlled substance as defined in 35 P.S. § 780-113(a)(16). The trial court found him guilty of the more serious of these charged offenses[, *i.e.*, section 780-113(a)(16),] which carried with it a harsher penalty.[FN]
>
> > [FN] Anyone who violates [section] 780-113(a)(16) is guilty of a misdemeanor and will be sentenced to imprisonment not exceeding one year or to pay a fine not exceeding $5,000. Anyone who violates Clause (31) of Subsection (a) is guilty of a misdemeanor and will be sentenced to imprisonment not exceeding 30 days, or to pay a fine not exceeding $500, or both.

This [C]ourt held that the legislature, by including Subsection (31) in Section 780-113 of the proscribed conduct section of the Drug Act, clearly separated out the specific crime of possession of a small amount of marijuana, and created a "graduated system of penalties" that imposes far heavier punishment for traffickers and lesser sanctions for casual users of marijuana. … **Gordon**, 897 A.2d at 509.

We remanded the matter for the trial court to sentence the defendant under the [SAM] statute, as the legislature clearly intended that a small amount of marijuana be separately and less severely punishable than possession of a controlled substance.

Similarly, in **Tisdale**, the defendant was arrested with 8.64 grams of marijuana[, which was separately packaged in 12 small plastic baggies]. He was convicted of [K&I] possession under Subsection (16). He argued on appeal he should have been convicted for possession of a small amount of marijuana under the more specific Subsection (31). We agreed that the legislature intended to provide a graduated system of penalties and that when both Subsections (16) and (31) apply, conviction properly rests on the specific charge found at Subsection (31), small amount of marijuana. **Tisdale**, 100 A.3d at 219.

**Commonwealth v. Kriegler**, 127 A.3d 840, 844-45 (Pa. Super. 2015).

Citing to **Gordon**, the juvenile court stated in its Opinion that it agreed with O.T. **See** Juvenile Court Opinion, 3/17/17, at 9 ("conced[ing] that the more specific and appropriate charge was [SAM].").

Relying on 42 Pa.C.S.A. § 9303,[4] the Commonwealth asserts that "the 'specific/general' rationale of **Tisdale**,[] 100 A.3d at 218-[]21 (citing three

---

[4] Section 9303 provides that "[n]otwithstanding … any other statute to the contrary, where the same conduct of a defendant violates more than one criminal statute, the defendant may be prosecuted under all available statutory criminal provisions *without regard to the generality or specificity of the statutes*." 42 Pa.C.S.A. § 9303 (emphasis added).

cases that pre-date Section 9303), is wrong and, despite [O.T.'s] argument to the contrary, this Court is not bound by [**Tisdale**] because it has been eliminated *by statute*." Commonwealth's Brief at 19 (emphasis in original). We are unpersuaded by the Commonwealth's argument. Section 9303 became effective in 2003, and **Tisdale** was decided in 2014, which remains good law. **See Kriegler**, 127 A.3d at 844, 845 (noting the abrogation of the "general/specific rule of statutory construction" by section 9303, but also citing **Tisdale** as being good law). As such, we are bound by our holding in **Tisdale**, that where both K&I possession and SAM apply, a conviction for SAM is proper. **See Tisdale**, 100 A.3d at 219.[5]

Based upon the foregoing, though we affirm the juvenile court's denial of O.T.'s Motion to suppress, we vacate the Dispositional Order and sentence imposed for K&I possession, and remand to the juvenile court for entry of an

---

[5] We are further unpersuaded by the Commonwealth's argument that, because O.T. possessed a number of individually-wrapped plastic baggies containing marijuana, he could not be adjudicated delinquent of the lesser offense of SAM, as he did not meet the requirement of the SAM statute that the marijuana possessed was not for sale. **See** Commonwealth's brief at 17-18. Like O.T., the defendant in **Tisdale** possessed several small, individually-wrapped plastic baggies containing marijuana, and this Court held that the defendant should have been convicted of SAM, not K&I possession. **See Tisdale**, 100 A.3d at 218.

adjudication of delinquency solely on the charge of SAM, and for imposition of a new sentence.[6]

Dispositional Order vacated. Case remanded for action consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17

---

[6] We acknowledge that the juvenile court stated in its Opinion that "O.T.'s probationary sentence[, *i.e.*, imposed on the K&I possession charge,] is the same as he would have received[] if O.T. had been correctly adjudicated under SAM, as opposed to K&I [possession]." Juvenile Court Opinion, 3/17/17, at 9. Nevertheless, we deem it appropriate to remand for resentencing.

- 10 -

IN THE INTEREST OF:      :  COURT OF COMMON PLEAS

             :  PHILADELPHIA COUNTY

O.T.            :  JUVENILE DIVISION

             :

APPEAL OF:        :

             :

O.T.            :  Petition # CP-51-JV-0000319-2016

             :

Type of Order: Opinion     :  Superior Court # 3802 EDA 2016

## OPINION

On February 16, 2016, Philadelphia police arrested the defendant, O.T., and charged him

with Possession With Intent to Deliver a Controlled Substance (35 P.S. §780-113(a)(30)-F),

Knowing and Intentional Possession of a Controlled Substance (35 P.S. §780-113(a)(16)-M) and

Knowing and Intentional Possession of Small Amount of Marihuana (35 P.S. §780-113(a)(31)-

M). The police also charged O.T. with Terroristic Threats (18 Pa.C.S. §2706-M1), on a

companion case, unrelated to this appeal.

On March 17, 2016, O.T. moved to suppress physical evidence, based on the Fourth and

Fourteenth Amendments of the United States Constitution and Article One, Section Eight of the

Pennsylvania Constitution. The defendant's motion asserted that the police had no reasonable

suspicion or probable cause to stop and/or arrest the defendant.

On March 17, 2016, after a hearing on the defendant's motions, this court denied the

defendant's motions to suppress, issued a guilty verdict on the charge of Knowing and Intentional

Possession of a Controlled Substance (35 P.S. §780-113(a)(16)-M), and deferred adjudication.[1]

The court acquitted O.T. on the companion case. On November 9, 2016, this court adjudged the

defendant delinquent on this case and placed O.T. on probation.[2]

---

[1] The March 17, 2016 Notes of Testimony from the suppression motion and the adjudicatory hearing are hereto attached and incorporated as Exhibit A.

[2] The November 9, 2016 Notes of Testimony from the delinquency adjudication and dispositional hearing are hereto attached and incorporated as Exhibit B.

On December 6, 2016, O.T. filed this appeal to the Superior Court of Pennsylvania. On March 2, 2017, O.T. filed a Statement of Errors Complained Of On Appeal.[3] O.T., through his attorney, the Defender Association of Philadelphia, claims that the court erred in denying his motion to suppress evidence and that there was insufficient evidence to support the charge of Knowing and Intentional Possession of a Controlled Substance (35 P.S. §780-113(a)(16)-M).

## FACTS

On February 16, 2016 at approximately 1:15PM, Philadelphia Police Officer Patrick Greider (Badge # 1734) was performing a SEPTA security check in the area of 5937 Market Street, on the west-bound side of the elevated platform of the train station located at 60th and Market Streets. (Notes of Testimony, March 17, 2016, pp. 9-10) A SEPTA security check consists of officers patrolling the train stations and ensuring that passengers have paid the fare and ensuring that nothing illegal is occurring. (N.O.T., p. 10)

Officer Greider looked through the grated fence toward the ground level below him and observed O.T. (N.O.T., p. 10) O.T. was talking to another male on the street. (N.O.T., p. 10) Officer Greider observed O.T. remove a black bag from the front groin area of his pants, remove an item from that bag, and hand said item to the male. (N.O.T., p. 10) The unknown male gave the defendant currency, which the defendant folded up and put in his back-right pocket. (N.O.T., p. 10) O.T. then returned the black bag back to his front groin. (N.O.T., p. 10) Officer Greider was one flight above O.T., as he made these observations (N.O.T., p. 11) Officer Greider did not know for sure what was the item that O.T. handed to the unknown male. (N.O.T., p. 11) Officer Greider did not know the amount of currency provided by the male to O.T. (N.O.T., p. 11)

Officer Greider testified that he believed that he had witnessed a drug transaction, based on the fact that said observations occurred in a high-crime, high-narcotics area. (N.O.T., p. 11)

---

[3] The Statement of Matters Complained Of On Appeal is hereto attached and incorporated as Exhibit C.

Officer Greider testified that he had made numerous arrests for narcotics in said area. (N.O.T., p. 11) Officer Greider also noted that the exchange of currency for an item coming from the defendant's pants was a common occurrence in narcotics sales. (N.O.T., p. 12) Officer Greider had made two prior arrests in said area. (N.O.T., p. 12) Officer Greider had been a police officer for approximately six months at the time of O.T.'s arrest. (N.O.T., p. 12)

Officer Greider was in full uniform on the date of O.T.'s arrest and he was not performing any specific surveillance. (N.O.T., p. 13) Officer Greider was approximately twenty feet away from O.T. when he made his observations, looking down on an angle. (N.O.T., p. 13) The two men would have been diagonally in front of Officer Greider; thus, Officer Greider possessed a side profile of both of the males. (N.O.T., p. 13) Officer Greider could see both men from heads to toes. (N.O.T., p. 14) Officer Greider conceded that there were most likely more people on the street, but he did not specifically recall. (N.O.T., p. 14) There were people coming on and off the subway during the time of this incident. (N.O.T., p. 14) Officer Greider had never conducted a specific narcotics surveillance. (N.O.T., p. 14) Officer Greider's experience was based on what he himself had observed. (N.O.T., p. 15) Officer Greider's two prior narcotics arrests in that same area occurred in the Fall of 2015. (N.O.T., p. 16) Officer Greider has made a total of five to ten narcotics arrests. (N.O.T., p. 16) Only one of the prior narcotics arrests was for Possession With the Intent to Deliver a Controlled Substance, and said arrest took place at a different location. (N.O.T., p. 17) Officer Greider did not hear the conversation between the two men. (N.O.T., p. 17) Officer Greider is on said platform several times per week. (N.O.T., p. 17) Officer Greider did not recall whether said SEPTA platform contained a video camera, nor did he check for one. (N.O.T., p. 17)

Upon approaching O.T., Officer Greider ordered him to stop. (N.O.T., p. 18) O.T. complied. (N.O.T., p. 18) Officer Greider did not see anything in O.T.'s hands. (N.O.T., p. 18) Officer Greider told O.T. that he was under arrest upon approaching him, and subsequently searched O.T. (N.O.T., p. 18) Officer Greider recovered from O.T. the black bag, which

3

contained nine clear zip-locked baggies containing marihuana. (N.O.T., p. 26) The black bag and marihuana baggies were placed on Property Receipt Number 3234795. (N.O.T., p. 26) A seizure analysis later confirmed that nine zip-locked baggies contained marihuana. (N.O.T., p. 29)

The parties stipulated that G.T., O.T.'s grandmother, would testify that she has known O.T. his entire life. (N.O.T., p. 30) G.T. would further testify that she is familiar with O.T.'s reputation among people in the community for being peaceful and law-abiding. (N.O.T., p. 30)

After Officer Greider arrested O.T., an incident occurred during which O.T. was alleged to have threatened Officer Greider; however that incident is not relevant to the instant appeal. (N.O.T., pp. 26-27)

## LEGAL DISCUSSION

### The Motion to Suppress was properly denied.

There is no dispute that Officer Greider was required to have probable cause in order to stop, seize, and search O.T. in the manner that he did. After all, Officer Greider informed O.T. that he was under arrest as he approached. Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991). The question we ask is not whether the officer's belief was "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Rather, we require only a "probability, and not a prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In determining whether probable cause exists, we apply a totality of the circumstances test. *Commonwealth v. Clark*, 558 Pa. 157, 735 A.2d 1248, 1252 (1999) (relying on *Gates, supra* ).

4

This court fully recognizes the long line of precedent regarding drug-trafficking cases with a single observed transaction on a public street, from *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995) to *Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007) to *Commonwealth v. Thompson*, 604 Pa. 198, 985 A2d. 928 (2009). O.T. seeks to find a safe haven within the grey area that exists between *Banks/Dunlap* and *Thompson*. This court believes that the facts in this case present more than the mere observation of a simple commercial transaction, and that Officer Greider possessed the requisite probable cause to arrest O.T. Officer Greider observed what he recognized to be a drug sale based on his knowledge and experience, at a specific drug-selling location.

*Thompson* reaffirmed that *Lawson* guides the court by outlining various considerations for whether probable cause exists. In addition to the number of transactions, *Lawson* articulates that the time is important, the street location is important, the use of a street for commercial transactions is important, the place where the small items were kept by one of the sellers is important, and the movements and manners of the parties are important. *Thompson*, 985 A.2d at 932 (citing *Commonwealth v. Lawson*, 309 A.2d 391, 394, 309 A.2d 391 (1973))

Officer Greider noted that the exchange of currency for an item coming from the defendant's pants was a common occurrence in narcotics sales. (N.O.T., p. 12) O.T. failed to impeach Officer Greider on the notion of whether drug dealers commonly keep their narcotics inside of their pants, or even more specifically, inside of containers which they keep inside of their pants. As a result, this court accepted Officer Greider's assertion as fact. It should also be noted that in *Commonwealth v. DelValle*, 74 A.3d 1081, 2013 PA Super 244 (2013), the Superior Court also acknowledged that the front of a person's pants was a dubious place to store non-contraband items.

This court is not aware of any specific formula, which it can apply to assess the importance of each of the considerations outlined by *Lawson*. This court simply believes that Officer Greider saw enough to reasonably believe that he had witnessed a drug transaction. There

5

was no impeachment of Officer Greider with regard to his claim that the transaction took place in a high-crime, high-narcotics area. (N.O.T., p.11) O.T. failed to challenge the basis of Officer Greider's characterization of the area. Therefore, this court accepted Officer Greider's characterization of the area as fact. Although O.T. did seek to minimize Officer Greider's personal narcotics-arrests experience, there is no reason to believe that any purported lack of personal experience precluded him from accurately characterizing said area as high-crime and high-narcotics.

The time and street location did not factor into this court's analysis. O.T. did not elicit any evidence to suggest that he was engaging in a legal commercial transaction. Furthermore, this court heard no evidence to suggest that anyone else in the street was using said area to engage in legal commercial transactions. Therefore, this court weighed the lack of any other commercial activity as a factor suggesting that this was an unusual, likely illegal, commercial transaction.

The most important consideration in this case is the fact that the item sold was being stored in a highly unusual and suspicious location, in a black bag being kept in O.T.'s crotch area. If the small item were not contraband, this court believes, as did Officer Greider, that the object would have been kept in one of O.T.'s pockets. Despite having the availability of pockets, O.T. secreted the items within a separate bag and kept said bag in an area, which is more private and less likely to be invaded by a third party. This court believes that placing the narcotics in his crotch area was a strategic way for O.T. to avoid the bag's visual detection, or even to avoid the bag from being recovered in the event of a frisk. This particular *Lawson* consideration weighs heavily in favor of suggesting that a narcotics transaction took place, and outweighs the other considerations.

Lastly, the type of movement between the buyer and seller seemed consistent with that of a drug sale. It is unusual for two individuals to come together and have a brief conversation, resulting in the retrieval of a small item from a private place, followed by the exchange of said item for money, and concluding with the two individuals walking away in separate directions

6

without any further interaction. Of course, these movements in of themselves could be consistent with a legal transaction; however, the Officer viewed the totality of circumstances, and this court will not supplant the Officer's judgment under these circumstances.

Officer Greider's conclusion that his observations were consistent with a drug transaction was based on a combination of the *Lawson* considerations. Individually, none of the *Lawson* factors could lead to probable cause, but taken in their totality, they are sufficient.

This case is distinguishable from *Banks* and *Dunlap,* in that the drug dealer stored items in a bag, which he retrieved from his crotch area. Also, in this case, the officer specifically linked his observations to his knowledge and experience. Another difference from *Banks* is that this case presents a high-crime, high-narcotics area. Admittedly, the instant case presents an officer with less experience than Officer Devlin from *Dunlap.* Furthermore, the instant case does not present a specific surveillance, resulting from any citizens' complaints regarding drug sales. However, this court believes that the retrieval of the black bag from O.T.'s crotch area, coupled with the other common indications of a drug deal, set this case apart, and compensate for any perceived lack of police experience. Furthermore, Officer Greider was able to articulate that his experience has shown that drug dealers often store narcotics in their crotch area. This court believes that the nexus was sufficient. This court is not willing to create an arbitrary threshold for the number of times that Officer Greider must see a drug dealer store narcotics in their crotch area, or a threshold for the number of hours of training he must attend to sufficiently learn that drug dealers store narcotics in their crotch area.

Officer Greider testified that he believed that he had witnessed a drug transaction, based on the fact that he had made numerous arrests for narcotics in said area. (N.O.T., p. 11) Officer Greider also noted that the exchange of currency for an item coming from the defendant's pants was a common occurrence in narcotics sales. (N.O.T., p. 12) Officer Greider had made two prior arrests in said area. (N.O.T., p. 12) Officer Greider had been a police officer for approximately six months at the time of O.T.'s arrest. (N.O.T., p. 12) Officer Greider was approximately twenty

7

feet away from O.T. when he made his observations, looking down on an angle. (N.O.T., p. 13) Officer Greider possessed a side profile of both of the males. (N.O.T., p. 13) Officer Greider could see both men from heads to toes. (N.O.T., p. 14) Officer Greider's experience was based on what he himself had observed. (N.O.T., p. 15) Officer Greider's two prior narcotics arrests in that same area occurred in the Fall of 2015. (N.O.T., p. 16) Officer Greider has made a total of five to ten narcotics arrests. (N.O.T., p. 16)

O.T. seems to be asking the court to disregard the nexus, based on O.T.'s arbitrary conclusion that Officer Greider does not have sufficient experience. This court believes that Officer Greider described a sufficient nexus between his knowledge/experience and the considerations outlined by *Lawson*. Just as overwhelming narcotics experience cannot in of itself sway the probable cause analysis, lack of experience cannot be deemed as a disqualifying factor in the probable cause analysis.

This court believes that there was sufficient experience to provide a clear lens, as Officer Greider observed the distinctive traits of this suspicious transaction. Officer Greider's testimony described sufficient knowledge and experience regarding the area, the practice of drug dealers secreting items within their pants, and the other details of this particular transaction. Still, O.T. argues that the experience is insufficient, thus O.T. seeks to disqualify Officer Greider from making a totality of circumstances conclusion. This court disagrees.

### Evidence Was Sufficient to Support the Charge of Knowing and Intentional Possession of a Controlled Substance-Small Amount of Marihuana

Appellant's claim is that the evidence was insufficient to sustain the guilty finding on the charge of Knowing and Intentional Possession of a Controlled Substance (K&I) (35 P.S. §780-113(a)(16)-M). The evidence is clear that O.T. possessed the marihuana packets on his person.

8

The seizure analysis, entered by way of stipulation, indicated that the packets did contain marihuana.[4] Therefore, it is clear that the statutory elements of K&I were met.

However, upon further examination of the seizure analysis and upon reviewing the case of *Commonwealth v. Gordon*, 897 A.2d 504, 2006 PA Super 77 (2006), this court concedes that the more specific and appropriate charge was Knowing and Intentional Possession of Small Amount of Marihuana (SAM) (35 P.S. §780-113(a)(31)-M. O.T.'s probationary sentence is the same as he would have received, if O.T. had been correctly adjudicated under SAM, as opposed to K&I.

If necessary, this court requests that the Superior Court remand the matter, in order to adjudicate O.T. guilty on the SAM, as opposed to the K&I.

### CONCLUSION

Accordingly, this court's Order should be affirmed.

BY THE COURT:

LORI A. DUMAS, J.

---

[4] The seizure analysis is hereto attached and incorporated as Exhibit "D."

9