**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARLOS EACKLES | : | |
| | : | |
| Appellant | : | No. 71 WDA 2024 |

Appeal from the Judgment of Sentence Entered August 28, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003580-2023

BEFORE: LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY KING, J.:           **FILED: MARCH 25, 2025**

Appellant, Carlos Eackles, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for delivery of a controlled substance—cocaine, possession with intent to deliver ("PWID")—cocaine, possession of a controlled substance—cocaine, and possession of drug paraphernalia.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On May 1, 2023, Pittsburgh Police Officers Timonthy Tabisz and James Verbitsky were conducting surveillance near a homeless shelter on the 600 block of Smithfield Street after having received complaints of drug sales and usage in the area. (N.T. Hearing, 8/28/23, at 6). Officer Tabisz had worked as a police officer for seven years, took several narcotics training classes, and had made

---

[1] 35 P.S. §§ 780-113(a)(30), (16), and (32).

multiple drug-related arrests over the years. (*Id.* at 5).

Officer Tabisz was surveilling the area from across the street, approximately 60 to 70 feet away, and he noticed Appellant sitting with other people on the steps of the shelter with a blanket covering him. Officer Tabisz saw an individual approach Appellant and hand him a $10.00 bill. Appellant then reached under the blanket momentarily and then handed the man a small white object, which Officer Tabisz believed to be crack cocaine based on his training and experience. (*Id.* at 8). Soon thereafter, another individual walked up to Appellant and handed him a $10.00 bill, after which Appellant reached under his blanket and then handed her a suspected rock of crack cocaine. (*Id.* at 8-9). Finally, a third individual walked up to Appellant and handed him an unknown amount of currency. Appellant again reached under the blanket and handed the individual a piece of suspected crack cocaine. (*Id.* at 9). After observing these transactions, all of which took place in 20 to 30 minutes, Officers Tabisz and Verbitsky approached Appellant and placed him under arrest. A search incident to arrest revealed $242.00 in Appellant's pocket as well as a small rock of crack cocaine from one of his socks and a pink colored pill.[2] The Commonwealth charged Appellant with delivery of a controlled substance, PWID, possession of a controlled substance, and

---

[2] At trial, the parties stipulated to a report showing that the suspected rock of crack cocaine contained crack cocaine base, and the pill recovered contained buprenorphine and naloxone. (N.T. Trial, 8/28/23, at 53).

- 2 -

possession of drug paraphernalia.

On August 25, 2023, Appellant filed a motion to suppress the items recovered in the search incident to arrest, arguing that the officers did not have probable cause to arrest him. The court conducted a hearing on August 28, 2023, during which Officer Tabisz testified. At the conclusion of the hearing, the court denied the suppression motion,[3] finding that there was probable cause to arrest Appellant, and the officers conducted a lawful search incident to arrest. (*Id.* at 36).

Appellant then waived his right to a jury trial and proceeded immediately to a bench trial.[4] Appellant testified in his own defense at trial, conceding that he had personally smoked crack cocaine, and that he was using a blanket to conceal his drug use, but denying that he had sold drugs to anyone. Appellant claimed that he was approached by a friend who owed him $40.00. (*Id.* at 59). At the conclusion of trial, the court found Appellant guilty on all counts. Appellant proceeded to sentencing that day, and the court sentenced him on count 1, delivery of a controlled substance, to 6 to 23 months of incarceration, followed by 2 years of probation.[5]

---

[3] The court denied the motion to suppress orally and entered a written order denying the motion on August 30, 2023.

[4] The court incorporated the testimony from the suppression hearing.

[5] Counts 2 and 3, PWID and possession of a controlled substance, merged with delivery of a controlled substance for sentencing purposes. The court imposed no further penalty for count 4, possession of drug paraphernalia.

Appellant filed a timely post-sentence motion on September 7, 2023. The court denied the post-sentence motion on December 11, 2023. Appellant filed a timely notice of appeal on January 9, 2024. Pursuant to the court's order, Appellant filed a concise statement of errors complained of on appeal on February 8, 2024.

On appeal, Appellant raises the following issue:

> Whether the trial court erred by denying [Appellant's] motion to suppress because the police officers lacked probable cause to justify their arrest and subsequent search of [Appellant]?

(Appellant's Brief at 5).

Appellant argues that the police did not have probable cause to justify Appellant's arrest. Appellant asserts that the facts of this case are distinguishable from those in **Commonwealth v. Delvalle**, 74 A.3d 1081 (Pa.Super. 2013), and **Commonwealth v. Thompson**, 604 Pa. 198, 985 A.2d 928 (2009), which involved arrests made in high crime areas and after hundreds of prior arrests. Appellant insists the situation was significantly different here where officers had only responded to overdoses in the past, and only "made multiple drug-related arrests." (Appellant's Brief at 15). Instead, Appellant suggests that his case is more similar to **Commonwealth v. Banks**, 540 Pa. 453, 658 A.2d 752 (1995), insisting that an exchange of unidentified items does not give way to probable cause. Appellant concludes that all evidence obtained after his arrest should have been suppressed as fruit of the poisonous tree, and this Court must grant relief. We disagree.

- 4 -

The following principles govern our review of an order denying a motion

to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015)).

> "To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person who is to be arrested." *Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa.Super. 2007). "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Burno*, 638 Pa. 264, 154 A.3d 764, 781 (2017) (quotation marks and citations omitted). "The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of

criminal activity." *Id.* (quotation marks and citations omitted). "Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training." *Wells*[*, supra*] at 1195.

*Commonwealth v. Sears*, 311 A.3d 34, 39 (Pa.Super. 2024).

In *Thompson, supra*, our Supreme Court held that a police officer's experience is a relevant factor in determining probable cause. There, the officer observed a pedestrian hand the driver of a parked car money and the driver hand the pedestrian something in return. The exchange occurred in a high crime area, and the officer was familiar with heroin sales in the neighborhood and had seen this type of exchange and made arrests hundreds of times. *Thompson, supra* at 211, 985 A.2d at 936. Ultimately, the *Thompson* Court held that based on the totality of the circumstances, probable cause was present to support the arrest.

In *Delvalle, supra*, this Court applied our Supreme Court's holding in *Thompson*, and explained that observation of a lone transaction by itself did not create probable cause, and a police officer's experience and a nexus between the experience and observed behavior would be necessary to establish probable cause. *Delvalle, supra* at 1085–86. Ultimately, the *Delvalle* Court concluded that probable cause was present to arrest an individual where the officer observed a suspected drug transaction four times in fewer than twenty minutes. Although the officer did not see the object handed to the buyers, this Court explained that the fact that the neighborhood

was a high drug transaction area, the suspicious secretion of the objects, the nature and location of the transaction, and the frequency and repetitiveness of the transactions established probable cause, even without considering the officer's experience. *Id.* at 1086. This Court further explained that the officer's previous experience conducting surveillance in the area 30 to 40 times, resulting in 75 to 100 arrests, and the similarity of the transaction to those arrests, would establish a nexus between the officer's experience and observations, which could also establish probable cause. *Id.*

Conversely, in *Banks, supra*, our Supreme Court held that the totality of the circumstances did not result in probable cause justifying a warrantless arrest. There, "a police officer chanced upon a single, isolated exchange of currency for some unidentified item or items, taking place on a public street corner at midday, and where appellant fled when approached by the officer." *Banks, supra* at 455, 658 A.2d at 753. The Court explained that "[e]very commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest." *Id.*

Here, at the conclusion of the suppression hearing, the trial court made the following findings on the record:

> The [c]ourt has reviewed the facts and circumstances here. This was an open air street in downtown Pittsburgh in daylight time. The officer observed three what he described he believed to be hand-to-hand transactions with individuals.
>
> So there were multiple transactions observed over a period of twenty to thirty minutes. The same routine was used in

each case. He described an attempt to conceal what would be retrieved with a blanket. The place where the small items were being kept appeared to be the same location. There clearly was and was testified to a currency exchange. And in this case, unlike some of the other cases, there was an ability to see items that were deemed to be consistent with what the officer knew in his training and experience to be crack cocaine.

The fact that the items were not recovered and those individuals were not apprehended is not dispositive of the fact that the [c]ourt finds in this case, based on the number of transactions, the time and day which they occurred, the location in which they occurred, where there were multiple open air drug transactions and sales occurring as described by the officer in an area where multiple drug-related arrests have occurred, the repeated and systematic way in which the transactions appear to be occurring, all of that rises to the level of probable cause that there was criminal activity that was occurring and it was possessing items with attempt to sell them indicated by the exchange of currency for items that were demonstrated through the officer's training and experience to be more likely than not narcotics transactions.

For those reasons, the [c]ourt finds there was probable cause to effect the arrest of [Appellant], including the search incident to arrest.

(N.T. Hearing, 8/28/23, at 34-36).

The suppression court's factual findings are supported by the record, and its legal conclusions drawn from those facts are correct. *See Ford, supra*. We agree with the trial court the totality of the circumstances in this case was sufficient to establish probable cause. *See Sears, supra*. Specifically, the officers were responding to complaints that they had received of drug sales and usage in the area. Officer Tabisz saw Appellant conduct three transactions in which Appellant delivered a substance that, based on his

training and experience, Officer Tabisz recognized as a rock of crack cocaine. Similar to the facts giving rise to probable cause in ***Delvalle, supra***, these transactions occurred over the course of about 30 minutes, each transaction occurring in the same manner. This case is distinguishable from ***Banks*** because here Officer Tabisz observed three transactions and saw Appellant hand over a small rock that Officer Tabisz recognized as crack cocaine. Therefore, the court did not err in denying Appellant's motion to suppress. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/25/2025